# In the United States Court of Federal Claims

No. 11-804C

(Filed: July 21, 2015)

| | | |
|---|---|---|
| ************************************ | * | |
| SUFI NETWORK SERVICES, INC., | * | |
| Plaintiff, | * | Non-Appropriated Fund Contract; Wunderlich Act Review; Finality of Board of Contract Appeals' Decision. |
| v. | * | |
| THE UNITED STATES, | * | |
| Defendant. | * | |
| ************************************ | * | |

*Frederick W. Claybrook, Jr.*, with whom was *Brian T. McLaughlin*, Crowell & Moring LLP, Washington, D.C., for Plaintiff.

*Douglas T. Hoffman*, with whom were *Benjamin C. Mizer,* Acting Assistant Attorney General, *Robert E. Kirschman, Jr.,*, Director, and *Steven J. Gillingham*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER REGARDING FINALITY OF ASBCA'S DECISION

WHEELER, Judge.

This case is before the Court at the Government's request following remand proceedings at the Armed Services Board of Contract Appeals ("ASBCA" or "Board"). The additional Board proceedings resulted from the decision of the U.S. Court of Appeals for the Federal Circuit in SUFI Network Services, Inc. v. United States, 755 F.3d 1305 (Fed. Cir. 2014), where the appellate court instructed this Court "to remand to the Board for further factual findings consistent with this opinion." Id. at 1326. The Board followed these instructions and has issued two new decisions, the first on February 2, 2015, SUFI Network Services, Inc., ASBCA No. 55306, 15-1 BCA ¶ 35,878, and the second on motions for reconsideration on May 20, 2015, SUFI Network Services, Inc., ASBCA No.

55306, 15-1 BCA ¶ 35,992. The Government has indicated that it is not satisfied with the Board's remand decisions, and it wants to have this Court, and presumably the Federal Circuit, review the merits of the Board's recent rulings.

On May 29, 2015, SUFI filed in this Court a notice indicating its full satisfaction with the Board's remand decision. On June 8, 2015, however, Defendant filed a 49-page "Notice Regarding Dissatisfaction with the Armed Services Board of Contract Appeals' Final Decision," with 704 pages of attachments. On June 9, 2015, the Court requested further briefing from the parties on the question of whether additional proceedings in this case are permitted or necessary, citing S & E Contractors, Inc. v. United States, 406 U.S. 1 (1972). Those briefs have been submitted, and the question is ready for ruling.

Under the Contract Disputes Act, 41 U.S.C. § 7101 et seq., promulgated in 1978, there would be no doubt that Defendant could request further review in this Court and the Federal Circuit. However, this case involves an Air Force non-appropriated fund activity, and the parties included in their contract the disputes procedures of the Wunderlich Act, 41 U.S.C. §§ 321-22. Under the Wunderlich Act, only the contractor has the right to appeal from a Board decision. Since SUFI has indicated its full satisfaction with the Board's remand decisions, the Court must address whether the Government has any legal basis to seek further review of the Board's decision.

## Procedural History

The Court described the facts of this case in an earlier ruling, SUFI Network Services, Inc. v. United States, 108 Fed. Cl. 287 (2012), aff'd in part, rev'd in part, 755 F.3d 1305 (2014). A brief summary and update of the procedural history is provided below.

This dispute originated from an April 26, 1996 contract between SUFI and the Air Force Non-Appropriated Funds Purchasing Office ("AFNAFPO") to provide telephone service in the guest lodging rooms on U.S. Air Force bases in Germany. Under the contract, SUFI agreed to provide the necessary telephone equipment and system operations at its own expense. In return, SUFI would share the telephone service revenues with the United States. As amended, the contract would be in place for fifteen years. During contract performance, however, the Air Force frustrated and undermined the use of SUFI's network, and thereby prevented the expected generation of revenues in which SUFI would share. Upon SUFI's request for declaratory relief, the ASBCA determined that the Air Force materially breached the contract when it directed SUFI in November 2003 to grant access from guest rooms to other long-distance providers. SUFI Network Servs., Inc., ASBCA No. 54503, 04-2 BCA ¶ 32,714 (Aug. 17, 2004). The Board concluded that the Air Force's material breach entitled SUFI to stop performance and cancel the contract. Id. at 161,869. On August 25, 2004, SUFI notified the contracting officer that it intended to stop performance. Through negotiations and a partial settlement agreement, SUFI stopped work

on May 31, 2005, and the following day, the Air Force assumed ownership and operation of SUFI's telephone system at each base.

On July 1, 2005, SUFI submitted 28 claims to the contracting officer totaling $130,308,071.53 in damages. On January 5, 2006, SUFI appealed to the ASBCA from the deemed denial of its claims, and the case proceeded to a 23-day hearing in 2007 in Falls Church, Virginia and Ramstein Air Base, Germany. During the Board proceedings, SUFI amended its claims to more than $163,000,000. On November 21, 2008, the Board issued its decision granting partial relief on 22 of 28 claims, but the Board awarded damages to SUFI of only $3,790,495.65, plus interest. SUFI Network Servs., Inc., ASBCA No. 55306, 09-1 BCA ¶ 34,018. After SUFI's three motions for reconsideration, the Board increased SUFI's award to $7,416,751.52. SUFI Network Servs., Inc., ASBCA No. 55306, 10-1 BCA ¶ 34,415 (Apr. 5, 2010).

On November 30, 2011, SUFI challenged the Board's decisions by filing a complaint in this Court under the Tucker Act, 28 U.S.C. § 1491. Judicial review in this Court proceeded utilizing the standards of the Wunderlich Act, 41 U.S.C. §§ 321-22. In the Court proceedings, the parties filed cross-motions for judgment on the administrative record, and engaged in a full briefing process and oral argument. On November 8, 2012, the Court entered an opinion and judgment granting SUFI's motion and awarding SUFI $114 million in damages above the amount that the Board had previously awarded. SUFI Network Servs., 108 Fed. Cl. at 287.

The Government appealed the Court's judgment to the Federal Circuit in January 2013, and SUFI cross-appealed. After briefing and oral argument, the Federal Circuit on May 29, 2014 issued its opinion, largely upholding this Court's findings of error in the Board's decisions, but ordering that the matter be remanded to the Board to make additional fact-finding and to issue another decision on the damages due SUFI, vacating this Court's quantum award. SUFI Network Servs., 755 F.3d at 1326.

In the remand proceedings before the Board, the parties briefed the damages issues extensively, provided oral argument, and presented proposed findings of fact. On February 2, 2015, the Board issued its final decision, awarding SUFI $111,849,833.33, plus interest. Administrative Judge David James issued the decision, the same judge who had issued the prior Board decisions. The decision was unanimous, as Acting Chairman Mark Stempler and Acting Vice-Chairman Monroe Freeman concurred. SUFI Network Servs., 15-1 BCA ¶ 35,878.

On March 5, 2015, the Air Force moved for reconsideration, and SUFI submitted its own limited motion for reconsideration, to correct computational errors in the lost profits award. After further extensive briefing, the Board on May 20, 2015 issued its decision denying the Air Force's reconsideration motion, but granting SUFI's motion,

increasing the award to SUFI by $1,404,665.10. SUFI Network Servs., 15-1 BCA ¶ 35,992. The Board's decision again was unanimous.

In the twelve years since the Air Force's material breach, there have been thirteen Board decisions, two decisions from this Court (including this one), and a Federal Circuit decision. The question is whether, under the Wunderlich Act, the United States may further contest this matter in this Court and the Federal Circuit in circumstances where SUFI accepts the Board's final decision in total.

## Discussion

More than 135 years ago, the U.S. Supreme Court established the principle that the Government may by contract designate an authorized representative to decide disputes between the contracting parties. Kihlberg v. United States, 97 U.S. 398 (1878) (Harlan, J.). In Kihlberg, under a contract for transportation services, the Government paid the contractor according to the distance traveled for each task. The parties concurred in designating the chief quartermaster of New Mexico with the authority to fix the distances that should govern the settlement of the contractor's accounts. Id. at 401. The Supreme Court held that the chief quartermaster's determination was final and binding, absent fraud or gross mistakes implying bad faith, and "cannot, therefore, be subjected to the revisory power of the courts without doing violence to the plain words of the contract." Id. Justice Harlan observed that, without an authorized representative, "disputes might have constantly arisen between the contractor and the government, resulting in vexatious and expensive and, to the contractor oftentimes, ruinous litigation." Id.

Following Kihlberg, the Government's standard practice for settling disputes with contractors involved the use of a "finality" or "disputes" clause that became boilerplate in supply and construction contracts. See Franklin M. Schultz, "Wunderlich Revisited: New Limits on Judicial Review of Administrative Determination of Government Contracts Disputes," 29 Law and Contemporary Problems 115 (Winter 1964). Just as in Kihlberg, the Government's practice was to designate an authorized representative to decide contract disputes, whose decision would be final and binding absent fraud or gross mistakes implying bad faith. Beginning in the 1950s, the designated representative usually was an agency board of contract appeals. By accepting the disputes clause as part of the contract, the contractor agreed that, pending resolution of any dispute, "he will diligently proceed with the work as directed." Id. at 116.

In 1951, the Supreme Court decided United States v. Wunderlich, 342 U.S. 98 (1951), holding that the decisions of the contractually designated representatives were final and binding unless there was evidence of fraud, defined as "conscious wrongdoing, an intention to cheat or be dishonest." Id. at 100. The Wunderlich decision provoked considerable controversy, and led to the Congressional passage of the Wunderlich Act in May 1954. This statute might more appropriately have been called the "Anti-Wunderlich

Act," because its purpose was to override the Supreme Court's Wunderlich decision. S & E Contractors, Inc. v. United States, 433 F.2d 1373, 1393, 193 Ct. Cl. 335, 372 (1970) (Collins, dissenting), rev'd, 401 U.S. 1 (1972). The new statute provided that the decision of the Government's authorized representative shall be final and conclusive "unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence." 41 U.S.C. § 321. The next section of the Wunderlich Act provided that "no Government contract shall contain a provision making final on a question of law the decision of any administrative official, representative, or board." 41 U.S.C. § 322.

The standard "Disputes" clause adopting the Wunderlich Act review standards, and the clause which appeared in SUFI's April 1996 contract, provides as follows:

> DISPUTES (1979 DEC)[1]
>
> a. Except as otherwise provided in this contract, any dispute or claim concerning this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall state his decision in writing and mail or otherwise furnish a copy of it to the Contractor. Within 90 days from the date of receipt of such copy, the Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to the Armed Services Board of Contract Appeals, and the decision of the Board shall be final and conclusive; provided that if no such appeal is filed, the decision of the Contracting Officer shall be final and conclusive. The Contractor shall be afforded an opportunity to be heard and to offer evidence in support of any appeal under the clause. Pending final decision on such a dispute, however, the Contractor shall proceed diligently with the performance of the contract and in accordance with the decision of the Contracting Officer unless directed to do otherwise by the Contracting Officer.
>
> b. This 'Disputes' Clause does not preclude consideration of law questions in connection with decisions provided for in paragraph "a" above, provided, that nothing in this contract shall be construed as making final the decision of any

[1] This "Disputes" clause was taken from the standard Department of Defense Non-Appropriated Fund clauses in effect when SUFI's contract was executed. The Contract Disputes Act ("CDA") generally covers only appropriated fund contracts, and is not applicable to AFNAFPO contracts. See 41 U.S.C. § 7102(a) (2012). Certain Non-Appropriated Fund Activities are covered by the CDA, i.e. those identified in 28 U.S.C. §§ 1346 and 1491, but AFNAFPO is not one of them.

> administrative official, representative, or board on a question of law.

Against this setting, the Supreme Court next ruled that the United States did not have the right to seek review of an adverse board of contract appeals' decision. S & E Contractors, Inc. v. United States, 406 U.S. 1 (1972) (Neither the contract nor the Wunderlich Act permitted the Government to challenge an administrative decision deemed to be final). This form of Disputes clause "is intended, absent fraud or bad faith, to provide a quick and efficient administrative remedy and to avoid 'vexatious and expensive and, to the contractor oftentimes, ruinous litigation.'" Id. at 8 (quoting Kihlberg, 97 U.S. at 401). As Justice Douglas observed, "[t]he contractor has ceded his right to seek immediate judicial redress for his grievances and has contractually bound himself to 'proceed diligently with the performance of the contract' during the disputes process." S & E, 406 U.S. at 8 (internal quotations omitted). The trade-off is that the United States agrees to be bound by board decisions favorable to the contractor. If the board decision is acceptable to the contractor, there are no more tiers of federal or administrative review. Id. at 4; see also, Roscoe-Ajax Constr. Co. v. United States, 499 F.2d 639, 204 Ct. Cl. 726 (1974) (In contractor's action to review discrete board findings regarding computation method, Government could not attack other administrative findings by counterclaim); Fischbach and Moore Int'l Corp. v. United States, 617 F.2d 223, 223 Ct. Cl. 119 (1980) (Agency heads could not refuse to accept the determinations of the boards of contract appeals favorable to contractors, and force them to litigate the merits of their claims in the Court of Claims. Contractors were entitled to recover on the basis of the boards' favorable decisions.).

The Government argues that SUFI precipitated the review in this Court and the Federal Circuit when it originally challenged the Board's award of only of $7,416,751.52. Now that the Board has modified its decision to award more than $113.2 million to SUFI, the Government contends that it may pursue further judicial proceedings because of the Board's alleged "failure to comply with the Federal Circuit's mandate." Def.'s Notice, June 8, 2015, at 1. A review of the Government's 49-page "notice" and its 700 pages of attachments indicates that it would like this Court (and presumably the Federal Circuit) to review yet again the Board's factual findings and legal conclusions. The Government's "notice" identifies approximately 25 areas where it says the "ASBCA must explain" its findings and conclusions. See id., Table of Contents. In response, SUFI asserts that the contract's Disputes clause and the Wunderlich Act do not permit another round of review. Pl.'s Response, June 23, 2015.

The Air Force designated the ASBCA as its authorized representative for disputes arising under the contract. For purposes of this case, the "United States" is the ASBCA, not the Department of Justice. While the Attorney General has the duty to "conduct . . . litigation in which the United States, an agency, or officer thereof is a party," 28 U.S.C. § 516, and to "supervise all [such] litigation," 28 U.S.C. § 519, the responsibility of the

Department of Justice here "is to implement [the Board's] decision and not to repudiate it." S & E, 406 U.S. at 13. The Wunderlich Act "should not be construed to require a citizen to perform the Herculean task of beheading the Hydra in order to obtain justice from his Government." Id. at 14. Justice Douglas went on to observe that:

> We are reluctant to construe a statute enacted to free citizens from a form of administrative tyranny so as to subject them to additional bureaucratic oversight, where there is no evidence of fraud or overreaching. In this connection, it should be noted that committee reports accompanying the Wunderlich Act indicate that judicial review was provided so that contractors would not inflate their bids to take into account the uncertainties of administrative action. This objective would be ill-served if Government contractors – having won a favorable decision before the agencies with whom they contracted – had also to run the gantlet of the General Accounting Office and the Department of Justice.

Id. at 14-15.

Applying the Supreme Court's principles in S & E Contractors, the Court concludes that SUFI's twelve-year saga is at an end. SUFI has indicated its satisfaction with the Board's decision. By SUFI's contract with AFNAFPO, the Board served as the authorized representative of the United States. The sole responsibility of the Department of Justice is to implement the Board's decision. The fact that the Department of Justice is dissatisfied with the Board's remand decision is immaterial to the Court's analysis. In assessing whether the Board followed the remand instructions of the Federal Circuit, it is enough to say that the Board obviously did what it was told. The Board promptly conducted the remand proceedings directed by the Federal Circuit. The Government cannot reject the Board's decision, and it has no right to challenge the merits of the Board's remand decision. SUFI's satisfaction with the Board's remand decision is the end of the line.

Accordingly, the Court dismisses this case with prejudice, with the expectation that the Department of Justice will instruct the AFNAFPO to pay the Board's award of damages with interest.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge