# 𝕴𝕟 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕱𝖊𝖉𝖊𝖗𝖆𝖑 𝕮𝖑𝖆𝖎𝖒𝖘

No. 11-804C

(Filed: October 19, 2016)

| | |
|---|---|
| ****************************************  * <br> SUFI NETWORK SERVICES, INC.,   * <br>   * <br>                     Plaintiff,   * <br>   * <br> v.   * <br>   * <br> THE UNITED STATES,   * <br>   * <br>                     Defendant.   * <br>   * <br> ****************************************  * | Application for Attorneys' Fees and Expenses; 28 U.S.C. § 2412 (b), (d); Vexatious Government Litigation; Equal Access to Justice Act; Positions Not Substantially Justified; Special Factors Warranting Upward Adjustment; Interest. |

*Frederick W. Claybrook, Jr.,* with whom was *Brian T. McLaughlin,* Crowell & Moring LLP, Washington, D.C., for Plaintiff.

*Douglas T. Hoffman,* with whom were *Benjamin C. Mizer,* Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.,* Director, and *Steven J. Gillingham,* Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER

WHEELER, Judge.

Plaintiff SUFI Network Services ("SUFI") is before this Court again seeking an award of attorneys' fees and expenses against the Government after more than a decade of litigation. The Government disputes nearly every aspect of SUFI's claim, including its liability to pay for any fees at all, the hourly rate at which fees can be recovered, whether interest applies to any fee award, and even whether this Court has the authority to grant SUFI's fee application. Given the breadth of the disagreements between the parties, the Court currently will consider only whether the Government is liable to SUFI for attorneys' fees and expenses, and if so, the hourly rates at which SUFI can recover, and the applicability of interest to any award.

SUFI is a small business, and has endured a lengthy litigation due to the Government's refusal to accept any responsibility for the U.S. Air Force's willful, material breach of its contract with SUFI. Even now, despite SUFI receiving a damages award in excess of $111 million, the Government insists it should not be responsible for SUFI's fees and expenses incurred during that litigation. The Government still attempts to side-step responsibility by arguing that it acted in good faith in advancing a substantially justified position throughout the litigation, and by distancing itself from the bad faith conduct of the Air Force upon which the litigation was based. The Court disagrees with the Government and finds that SUFI is entitled to recover its attorneys' fees and expenses at its law firm's full, current rates with interest.

Factual and Procedural Background[1]

Over 20 years ago, on April 26, 1996, SUFI entered into a contract with the Air Force to provide long distance telephone service in the guest lodging facilities on Air Force bases in Germany. SUFI Network Services, Inc. v. United States, 108 Fed. Cl. 287, 287 (2012) ("SUFI I"). SUFI agreed to provide the necessary equipment and system operations at its own expense, and in return guests of the bases would use long distance carriers selected by SUFI. Id. The Air Force agreed that SUFI would be the exclusive provider for guests to make long distance phone calls. SUFI Network Services, Inc. v. United States, 755 F.3d 1305, 1305 (Fed. Cir. 2014) ("SUFI CAFC I"). Since the Government invested no funds and the parties intended to share the profits from long distance calls, the contract was considered to be a non-appropriated funds contract. SUFI I, 108 Fed. Cl. at 287.

The Air Force repeatedly and intentionally failed to protect SUFI's interest under the contract, resulting in a material breach of the contract. Id. at 304; SUFI CAFC I, 755 F.3d at 1310; SUFI Network Services, Inc., ASBCA No. 54503, 04-2 BCA ¶ 32,714 (Aug. 17, 2004) ("SUFI II") at 161,869. On August 24, 2004, SUFI informed the contracting officer that it intended to stop work on the contract and it sold the telephone system to the Air Force for $2,275,000. SUFI CAFC I, 755 F.3d at 1311-12.

The disputes clause of SUFI's contract mandated that SUFI first submit a claim to the contracting officer and then, if dissatisfied, appeal any decision to the Armed Services Board of Contract Appeals ("ASBCA"). SUFI Network Services, Inc., ASBCA No. 54503, 04-1 BCA ¶ 32,606 (Apr. 22, 2004) ("SUFI I"). On July 1, 2005, SUFI submitted 28 monetary claims to the contracting officer, totaling $130,308,071.53. The contracting officer only granted a small portion of one claim for $132,922. SUFI I, 108 Fed. Cl. at

---

[1] Given the lengthy history of this case, there are substantial documents comprising the record. The Court has employed the following abbreviations and citations in this opinion: SUFI's Application for Attorneys' Fees and Expenses ("Appl."); Defendant's Response to Plaintiff's Application for Attorneys' Fees and Expenses ("Def.'s Resp."); SUFI's Reply in Support of its Application for Fees and Expenses (Pl.'s Reply); ASBCA Rule 4 File documents ("R4F, vol. ——, tab ——, at ——"); Hearing exhibits ("Ex. ——"); Testimony before the ASBCA ("Witness, Hr'g Tr. ---").

295.  On January 5, 2006, SUFI appealed to the ASBCA and amended its claim to over $163,000,000.  Id.  After an administrative trial, the Board partially granted 21 out of 28 claims, but awarded only $3,790,496.65 plus interest.  Id.  SUFI filed three consecutive motions for reconsideration with the Board.  In response to each motion, the Board increased SUFI's award to a final total of $7,416,751.52.  Id.  Each time, the Board found that it had made errors in its adjudication of SUFI's claim, and corrected some of them.  Id. at 298.  SUFI Network Services, Inc., ASBCA No. 55306, 09-2 BCA ¶ 34,021 (Jul. 15, 2009) ("SUFI IX") at 169,094.

On November 30, 2011, over six years after submitting claims to the contracting officer and after eleven decisions from the ASBCA, SUFI filed an appeal before this Court. SUFI I, 108 Fed. Cl. at 295.  Upon review of the Board's record and the parties' arguments, the Court found that, despite the Board's reconsideration of its awards, the Board's decision still suffered from many legal errors.  Id. at 307-08, 310-12, 317.  The Court observed that "the contract was completely mismanaged by the Air Force, to the severe detriment of SUFI . . . .  The Air Force has only itself to blame for a totally botched program of grand proportions."  Id. at 296.  The Court awarded SUFI $118,764,081.34 in damages.  Id. at 296.  These damages were $111,000,000 higher than the Board's award.

In January 2013, the Government appealed to the Federal Circuit and SUFI cross-appealed.  The Federal Circuit largely upheld this Court's findings of error in the Board's decisions.  SUFI CAFC I, 755 F.3d at 1313.  However, the Federal Circuit vacated the Court's monetary award and ordered that the matter be remanded to the Board to determine the appropriate damages.  Id. at 1326.  This Court retained jurisdiction during the remand. Id.

SUFI was required, once again, to prepare and argue before the ASBCA.  On February 2, 2015, the Board issued its final decision and awarded SUFI $111,849,833.33 plus interest.  SUFI Network Services, Inc., ASBCA No. 55306, 15-1 BCA ¶ 35,878 (Mar. 29, 2015).  Both parties filed motions for reconsideration to correct computational errors in the Board's award.  On May 20, 2015, the Board denied the Government's motion to reconsider and granted SUFI's motion, further increasing SUFI's award by $1,404,665.10. Id. at ¶ 35,992.  Both decisions from the Board's panel were unanimous and the final award, $113,254,498.43, was only $5,509,582.91 less than this Court's award and was $105,837,746.91 in excess of the Board's initial, pre-remand award.

But the Government was not yet finished.  It filed a request for review of its own Board's decision with this Court.  SUFI Network Services, Inc. v. United States, 122 Fed. Cl. 257, 263 (2015) ("SUFI II").  This Court dismissed, holding that, in a Wunderlich Act review, "only the contractor has the right to appeal from a Board decision."  Id. at 259. Importantly, this Court addressed the decades old Supreme Court precedent establishing that, in a Wunderlich Act case, the Government cannot appeal from a decision by its own authorized representative absent a claim of fraud or bad faith.  Id. at 261-62 (citing S&E

Contractors, Inc. v. United States, 406 US 1, 8 (1972)); SUFI Network Services, Inc. v. United States, 817 F.3d 773, 777 (Fed. Cir. 2016) ("SUFI CAFC II"). The Federal Circuit summarily affirmed, again stating that the Government cannot seek any review of the Board's decision. SUFI CAFC II, 817 F.3d at 778. The Government cited no authorities that were on point. Id. Moreover, the Federal Circuit held that, even if it had not summarily affirmed, there is no evidence that the Board acted in bad faith. Id. at 779.

Before the Court now, and hopefully for the last time, SUFI seeks its attorneys' fees and expenses during all stages of this action under 28 U.S.C. § 2412 (2012). Appl. at 1. SUFI claims it is entitled to recover its fees at full, current law firm rates either under 28 U.S.C. § 2412(b) for the Government's bad faith litigation or under 28 U.S.C. § 2412(d) as an eligible small business. Id. SUFI filed its fee application on June 17, 2016. The Government filed its response in opposition to SUFI's application on September 1, 2016. SUFI filed a reply on September 23, 2016. The Court heard oral argument on October 6, 2016. The parties agreed to bifurcate the issues of liability and damages. Under that agreement, this Court will only consider the issues of whether SUFI is entitled to fees and, if it is entitled, the applicable hourly rate and when interest began to accrue. Order Granting Motion to Bifurcate, No. 11-804C, Dkt. No. 82 (July 6, 2016).

Throughout this lengthy litigation, the law firm of Crowell & Moring in Washington, D.C. has represented SUFI before the Board, this Court and the Federal Circuit. Appl. at 1. It began work as SUFI's counsel in 2004 and continues to represent SUFI today in this matter. Id. at 31.

There have been one contracting officer decision, thirteen Board decisions, three decisions from this Court (including this one), and two Federal Circuit decisions within an eleven-year period. The Court hopes to finally put this case to rest.

## Discussion

In general, 28 U.S.C. § 2412 is intended to put the private litigant and the Government on equal footing regarding the costs of litigation. S. Rep. No. 89-1329, at 2 (1966). The primary purpose of 28 U.S.C. § 2412(d), or the Equal Access to Justice Act ("EAJA"), is to reduce a potential plaintiff's economic deterrents to contesting unreasonable government action by holding the Government liable for attorneys' fees and expenses when the Government's position was not substantially justified. Pub. L. No. 96-481 (1980); see also H.R. Rep. No. 96-1418 at 6, as reprinted in 1980 U.S.C.C.A.N. 4984. In addition, Congress noted that the Government has greater resources and expertise than the average civil defendant and so the "standard for an award of fees against the United States should be different from the standard governing an award against a private litigant." Pub. L. No. 96-481.

Two grounds for fee recovery under § 2412 are applicable in this case.   Under §2412(b):

> [A] court may award reasonable fees and expenses of attorneys . . . to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States . . . .   The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C. § 2412(b).   Section 2412 allows a prevailing party against the Government to recover reasonable attorneys' fees and expenses to the extent that any other party would be liable under common law.   Id.   Under common law, a prevailing party is entitled to an award of fees and expenses when the losing party "acted in bad faith, vexatiously, wantonly or for oppressive reasons." Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 258-59 (1975); F.D. Rich Co. v United States ex rel. Industry Lumber Co., 417 U.S. 116, 129 (1974).

Alternatively, a party may recover attorneys' fees and expenses under § 2412(d):

> [A] court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d).   To receive an award under subsection (d), a party must qualify as an eligible small business entity.   Id. at (d)(2)(B).   Unlike recovery under subsection (b), the award is subject to a cap of $125 per hour.   Id. at (d)(2)(A).   The cap can be adjusted to account for the geographical cost of living or other special factors.   Id.; Burlington v. Dague, 505 U.S. 557, 562 (1992).   To succeed under this subsection, the Government's position must not have been substantially justified.   28 U.S.C. § 2412(d).   The Government bears the burden of proving that its position was reasonable in law and in fact.   Pierce v. Underwood, 487 U.S. 552, 565 (1988); Ramcor Services Group, Inc. v. United States, 185 F.3d 1286, 1290 (Fed. Cir. 1999).

Here, the parties disagree about the appropriate interpretations of § 2412 (b) and (d), and they marshal significant case law to bolster their respective positions.   The Court will consider more fully below the standards of law and review appropriate for both subsections.   However, as a general matter, since § 2412 represents the Government's

waiver of sovereign immunity, the language of the statute must be strictly construed in favor of the United States. Ardestani v. Immigration and Naturalization Service, 502 U.S. 129, 137 (1991). This Court may only award attorneys' fees and expenses against the Government "to the extent explicitly and unequivocally provided" under the statute as informed by precedential case law. Fidelity Construction Co. v. United States, 700 F.2d 1379, 1386 (Fed. Cir. 1983).

The Government argues that SUFI is not entitled to any of its attorneys' fees and expenses. Def.'s Resp. at 2. The Government first challenges the applicability of § 2412 to most of the litigation hours incurred by SUFI. It argues that this Court does not have the authority to award SUFI its fees, or that § 2412 precludes recovery for hours incurred at specific forums. Def.'s Resp. at 3-10. Next, the Government generally challenges recovery under both sections of § 2412 by arguing that the Government's actions were substantially justified and that it did not act in bad faith. Id. at 10, 23. It then argues that even if SUFI is entitled to recovery, it is not entitled to any increases in hourly rates under either subsection. Id. at 28-34. The Court will consider each challenge in turn.

A.  Section 2412 is Applicable to all Stages of This Litigation.

SUFI is requesting attorneys' fees and expenses under subsection (b) or, alternatively, subsection (d) of § 2412. Appl. at 1. SUFI claims that under either subsection it is entitled to fees associated with each stage of litigation, including hours incurred before the ASBCA, this Court, the Federal Circuit and in preparation of this application. Id. at 1, 7-8. In response, the Government claims that only the Federal Circuit has the authority to determine whether SUFI is entitled to recovery of its fees before the Federal Circuit and this Court. Def.'s Resp. at 3. In addition, it claims that § 2412 does not allow for the recovery of attorneys' fees incurred before the ASBCA. Id. at 5. Thus, before the substance of SUFI's application can be assessed, the Court must first determine which litigation hours are eligible for recovery under § 2412. As explained below, the Court holds that it has the authority to award fees under § 2412 for all of SUFI's litigation hours before the Federal Circuit, this Court and the ASBCA.

1.  The Court has the Authority to Award Fees for Hours incurred before the Federal Circuit and this Court.

SUFI is seeking attorneys' fees for its hours spent before this Court and the Federal Circuit. Appl. at 1, 7. The parties do not dispute that § 2412 applies to the hours before this Court. Pl.'s Reply at 1; Def.'s Resp. at 3. However, the Government argues that, according to the Federal Circuit "it will make its own EAJA determinations for appellate fees." Def.'s Resp. at 3. The Government suggests that SUFI should have further extended this litigation by filing two separate applications for attorneys' fees and expenses – one before this Court and one before the Federal Circuit – which would have entailed two sets of briefing and two oral arguments. Id.

The Supreme Court has spoken to this issue. "The amount of the award for [appellate] services should, as a general rule, be fixed in the first instance by the District Court . . . ." Perkins v. Standard Oil Co. of California, 399 U.S. 222, 223 (1970). Courts have applied this rule to fee-shifting statutes generally, and the Court sees no reason not to apply it here. Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 591 (9th Cir. 1984) (fee recovery under ERISA); Smith v. Detroit Board of Education, 728 F.2d 359, 360 (6th Cir. 1984) (fee recovery under 42 U.S.C. § 1988); Lavender v. California, 683 F.2d 133, 134 (6th Cir. 1982) (fee recovery under 42 U.S.C. § 406(b)(i)).

Even without Supreme Court precedent, the Government's approach would be highly inefficient, especially given the long history in this case. When presented with two separate filings for attorneys' fees, precisely what the Government advocates, the Third Circuit stated "judicial resources could have been saved if both petitions were filed in district court. Any appeals from the judgment below would have then come up together, thereby insuring uniform appellate consideration." Garcia v. Schweiker, 829 F.2d 396, 398 (3d Cir. 1987). Moreover, the Courts of Appeal have acknowledged that the awarding of fees is not an appropriate use of an appellate court:

> The Courts of Appeal, unlike a trial court, do not have original jurisdiction to resolve issues of fact . . . . We do not have a witness chair for hearing evidence, and we are not in a position to conduct an evidentiary hearing where proof is offered on the question of attorney's fees.

O'Bryan v. City of Saginaw, 722 F.2d 313, 314 (6th Cir. 1983). The Second Circuit likewise held that "[a]n appellate panel is simply not equipped to give proper consideration to the many-faceted factual disputes that may affect a claim for attorney's fees." Dague v. City of Burlington, 976 F.2d 801, 804 (2d Cir. 1991).

In support of its position, the Government relies primarily on two Federal Circuit decisions. Phillips v. General Services Administration, 924 F.2d 1577 (Fed. Cir. 1991); Gavette v. Officer of Personnel Management, 808 F.2d 1456 (Fed. Cir. 1986). In both cases, the Federal Circuit held that it was in the best position to determine the awarding of attorneys' fees. Gavette, 808 F.2d at 1468 ("The Federal Circuit is in a better position than the board to determine the amount of fees and expenses to be awarded in connection with the appeal of this court . . . ."); Phillips, 924 F.2d at 1581 ("We conclude that a request for attorneys' fees . . . for services rendered in judicial proceedings must, as in the case of an EAJA request, be directed to this court."). However, the Government ignores a key distinction between these cases and SUFI's application for fees. In Gavette and Phillips, the Federal Circuit held that it was in a better position than an *administrative board* to determine fees. Gavette, 808 F.2d at 1458 (referring to the Merit Systems Protection Board); Phillips, 924 F.2d at 1578 (same). In Phillips, the Federal Circuit's holding rested

entirely upon the interpretation of 5 U.S.C. § 7701 which stated that a board had no authority to award attorneys' fees for the Federal Circuit's review of a board's decision. 924 F.2d at 1580 (citing Olsen v. Department of Commerce, 735 F.2d 558, 560-61 (Fed. Cir. 1987)). The Federal Circuit's heavy reliance on the inappropriateness of a board awarding attorneys' fees for work done at the appellate level is readily apparent. It is likewise apparent that this Court is not a board. Thus, these cases are not controlling. However, there are other Federal Circuit decisions that affirm the appropriateness of filing an application for attorneys' fees and expenses incurred at the appellate level with a trial court under § 2412. Oliveira v. United States, 827 F.2d 735, 741-44 (Fed. Cir. 1987) (affirming the appropriateness of the Claims Court's ability to award fees for appellate work); Kirchdorfer, Inc. v. United States, 803 F.2d 711, 712 (Fed. Cir. 1986) (ordering plaintiff to file for fees in trial court to avoid piecemeal litigation).

The Supreme Court and Federal Circuit precedent support the proposition that a trial court may award attorneys' fees for hours incurred at the appellate level. The Government's objection to this fact is unfounded, and further demonstrates the Government's insistence on challenging SUFI at each step in this lengthy litigation.

2. Section 2412 is applicable to SUFI's litigation hours before the ASBCA.

SUFI also seeks an award of attorneys' fees and expenses for legal work before the ASBCA, both for the initial Board proceedings before coming to this Court and the proceedings after remand from the Federal Circuit.

Again, the Supreme Court has already addressed this issue. Regarding board proceedings following remand, the Supreme Court stated "in those cases where the district court retains jurisdiction of the civil action and contemplates entering a final judgment following the completion of administrative proceedings, a claimant may collect EAJA fees for work done at the administrative level." Melknoyan v. Sullivan, 501 U.S. 89, 97 (1991). The Government challenges the applicability of Melknoyan by arguing that the Melknoyan decision only applies to Social Security litigation. Def.'s Resp. at 8. However, the Supreme Court precedent upon which Melknoyan is based makes clear that its ruling is not just limited to Social Security cases:

> [A]dministrative proceedings may be so intimately connected with judicial proceedings as to be considered part of the "civil action" for purposes of a fee award. *This is particularly so in the Social Security context* where "a suit [has been] brought in a court," and where "a formal complaint within the jurisdiction of a court of law" remains pending and depends for its resolution upon the outcome of the administrative proceedings.

> We conclude that where a court orders a remand to the Secretary in a benefits litigation and retains continuing jurisdiction over the case pending a decision from the Secretary which will determine the claimant's entitlement to benefits, the proceedings on remand are an integral part of the "civil action" for judicial review, and thus attorney's fees for representation on remand are available subject to the other limitations in the EAJA.

Sullivan v. Hudson, 490 U.S. 877, 892 (1989) (emphasis added).  It is evident from the foregoing that, as a general matter, attorneys' fees are recoverable for board proceedings following a remand.  The Supreme Court simply remarked that the case before it, involving Social Security litigation, is a particularly appropriate context in which to apply this general rule.  Id.  Further, it seems intuitive to include those costs associated with a court-ordered remand to a board in an application for attorneys' fees.  The costs associated with the Board proceedings on remand were unavoidable in the process of resolving SUFI's claim.  SUFI CAFC I, 755 F.3d at 1326 ("[we] remand to the Court of Federal Claims, with instructions to remand to the Board for further factual findings consistent with this opinion.").

The Supreme Court also has found that when the work produced during a board proceeding is "useful and of the type ordinarily necessary" to litigate before a court, a court may award attorneys' fees and expenses for that work.  Webb v. Dyer City Board of Education, 471 U.S. 234, 249-50 (1985).  In addition, SUFI cites ten other cases in which a court awarded attorneys' fees for board proceedings under this rationale.  Appl. at 3.  It cannot be disputed that the work involved during the initial Board proceedings was essential to SUFI's success at both the trial court and appellate level.  This Court's main function in this case was to review the Board's record and decision for error, the same record that SUFI's attorneys worked to produce.  SUFI I, 108 Fed. Cl. at 294 ("This case is before the Court for review of the decision of the Armed Services Board of Contract Appeals . . . .").

The Supreme Court precedent supports the inclusion of SUFI's litigation hours before the ASBCA in its application for attorneys' fees and expenses.  When those hours before a board are either explicitly required by a court or are of paramount importance to a court's decision, then they are eligible for recovery under a fee-shifting statute.  Melknoyan, 501 U.S. at 97; Sullivan, 490 U.S. at 892; Webb, 471 U.S. at 249-50.

SUFI bolsters its argument with a specific Federal Circuit decision, Fidelity Construction Co. 700 F.2d 1379 (Fed. Cir. 1983).  In Fidelity, the Federal Circuit held that § 2412 allowed "the court [to] award fees for services before a board only when it also awards fees for service before itself."  Id. at 1386.  Section 2412 does not allow a board to award fees for those hours incurred before it, but when a board decision is successfully appealed then the hours before the board may be covered under EAJA.  Id. (citing 28 U.S.C.

§ 2412(d)(3)).  When a court reviews a board decision and finds that the board was in error, the appellant's work before the board was necessarily key to that decision.

The Government argues that <u>Fidelity</u> is inapplicable to this case because <u>Fidelity</u> was brought under the Contract Disputes Act ("CDA"), while this case involves a non-appropriated fund instrumentality.  Def.'s Resp. at 9; <u>Fidelity</u>, 700 F.2d at 1381; <u>SUFI I</u>, 108 Fed. Cl. at 294.  The Federal Circuit does emphasize the fact that <u>Fidelity</u> involved a dispute under the CDA, but this Court declines to limit the rule in <u>Fidelity</u> to CDA cases for two reasons.  First, the Supreme Court precedents discussed above stating that § 2412 allows an award of fees incurred before a board when that work was useful during appellate review were decided after <u>Fidelity</u>.  <u>Melknoyan</u>, 501 U.S. at 97; <u>Sullivan</u>, 490 U.S. at 892; <u>Webb</u>, 471 U.S. at 249-50.  Second, even if the <u>Fidelity</u> decision did limit recovery of fees incurred before a board to CDA cases, when Congress amended EAJA in 1985 it expressly stated its intent for EAJA to 'cover[] all cases commenced before the Boards of Contract Appeals on or after October 1, 1984." H.R. REP. No. 99-120 at 7, <u>as reprinted in</u> 1985 U.S.C.C.A.N. 132, 136.  Congress made this statement after <u>Fidelity</u> was published.  Likewise after <u>Fidelity</u>, the Federal Circuit held that § 2412(b) applies to fee-shifting in all cases properly brought under that section.  <u>Centex Corp. v. United States</u>, 486 F.3d 1369, 1375 (Fed. Cir. 2007).  The Supreme Court, subsequent Federal Circuit cases and Congress reconfirmed, following <u>Fidelity</u>, that § 2412 is applicable to the kind of board proceedings at issue in this case.

The Government offers other unconvincing arguments that this Court should interpret § 2412 to exclude the ASBCA proceedings from this claim.  <u>See</u> Def.'s Resp. at 5.  These arguments invoke classic statutory interpretation guidelines such as strictly construing statutory language, inferring the intent of Congress from the absence of words, and looking to other similar fee-shifting statutes to compare language. <u>Id.</u> at 5-7.  However, these arguments are especially weak given the guidance of the Supreme Court and Congress' explicit intent to inform this Court's decision.  It is precisely small businesses, like SUFI, that Congress intended to protect in exactly these types of circumstances, "there is evidence that small businesses are the target of agency action precisely because they do not have resources to fully litigate the issue."  H.R. REP. No. 96-1418, at 10.  This Court cannot advance the goals of § 2412 without including the ASBCA legal fees in SUFI's claim.

In sum, § 2412 is applicable to all of SUFI's litigation fees and expenses before the ASBCA, this Court and the Federal Circuit, including those incurred in preparation of this application.

**B.  SUFI's Attorneys' Fees and Expenses are Recoverable under either § 2412(b) or, in the alternative, § 2412(d).**

SUFI bases this fee application on §2412(b) or, in the alternative, § 2412(d).  Appl. at 11, 31.  An award on the basis of either subsection depends upon the Government's behavior.  Subsection (b) requires that the Government act in "bad faith, vexatiously, wantonly or for oppressive reasons."  Alyeska Pipeline Service Co, 421 U.S. at 258-59; F.D. Rich Co., 417 U.S. at 129.  Subsection (d) requires that the Government's position was not substantially justified.  28 U.S.C. § 2412 (d)(1)(A).  Whether the Government acted in bad faith or, alternatively, advanced a position that was not substantially justified is the issue presented in this case.  The Government does not dispute the applicability of either subsection on any other grounds.  Def.'s Resp. at 10, 23.  The Court finds that SUFI is entitled to an award of its attorneys' fees and expenses under either subsection of § 2412 because the Government acted in bad faith and also advanced a position that was not substantially justified.

**1.  SUFI is Entitled to its Attorneys' Fees and Expenses under § 2412(b).**

SUFI argues that the Government acted in bad faith before and during this litigation, including the Air Force's actions following breach and the Government's actions before the ASBCA, this Court and the Federal Circuit.  Appl. at 11.  The Government argues that only its actions after the ASBCA's third decision on reconsideration may be considered and, further, that there is no evidence that it acted in bad faith.  Def.'s Resp. at 23.  The Government is wrong on both counts.  Government action before and after the ASBCA proceedings may be considered and there is ample evidence of the Government's bad faith.

When considering bad-faith attorneys' fee awards, courts normally focus primarily on litigation conduct and not on the underlying agency action subject to the complaint.  Hubbard v. United States, 480 F.3d 1327, 1332 (Fed. Cir. 2007).  However, bad faith pre-litigation conduct can be considered in some circumstances.  Hall v. Cole, 412 U.S. 1, 15 (1973); Vaughan v. Atkinson, 369 U.S. 527, 531 (1962).  In Vaughan v. Atkinson, the Supreme Court held that when a seaman was repeatedly refused payment and forced to hire a lawyer to vindicate his rights, recovery of his attorneys' fees should include any fees incurred due to his employer's bad faith refusal to pay his wages.  369 U.S. at 531.  In Hall v. Cole, the Supreme Court held that bad faith may be found "in the actions that led to the lawsuit" and "in the conduct of the litigation."  412 U.S. at 15.  Since these decisions, the Courts of Appeal have similarly held that pre-litigation conduct may be considered in determining bad faith.  See e.g., Maritime Management, Inc. v. United States, 242 F.3d 1326, 1333 (11th Cir. 2001); Mendenhall v. National Transportation Safety Board, 92 F.3d 871, 875-77 (9th Cir. 1996); American Hospital Assoc. v. Sullivan, 938 F.2d 216, 220-21 (D.C. Cir. 1991).

The Government relies on a Federal Circuit decision, Centex Corporation, in arguing that only Government conduct after the ASBCA's third reconsideration can be considered when determining the presence of bad faith. Def.'s Resp. at 26. In Centex Corporation, the plaintiffs sought an award of attorneys' fees against the Government for bad faith conduct in encouraging Congress to enact the Guarini amendment which retroactively eliminated certain tax benefits. 486 F.3d at 1371. As the Government cites in its response, the Federal Circuit held that "[f]ee-shifting is not permitted for bad faith conduct that precedes the accrual of the claim in question." Def.'s Resp. at 26; Centex Corp., 486 F.3d at 1375. The Government believes this holding means that SUFI's claim did not "accrue" until SUFI's initial filing before this Court. Again, the Government's interpretation of the case law is unconvincing. The very next sentences following the Government's citation states, "In this case, the plaintiffs' claims did not accrue until after the enactment of the Guarini amendment. The conduct of government agencies . . . before that time cannot form the basis for an award of attorneys' fees . . . ." Centex Corp., 486 F.3d at 1375. Taken together, a plain reading of the Federal Circuit's holding is that the claim in Centex Corporation could not accrue until the legislation complained of, the Guarini amendment, came into existence. Id. For the accrual of a claim to begin, the plaintiff must be actually harmed by some Government action whether it be the enactment of a legislative amendment or the breach of a contract. Here, SUFI was harmed by definitive Government action in the form of a willful breach of contract long before the ASBCA's third reconsideration.

The facts of this case demand a finding similar to that in Vaughan v. Atkinson because the pre-litigation Government conduct literally left SUFI with no choice but to seek formal adjudication. Following the Air Force's willful breach of the contract, the Government continued to delay and obstruct SUFI's every attempt to recover its losses. The contracting officer denied *all* of SUFI's substantial claims despite the Board later finding that the Air Force's breach was willful and material. SUFI I, 108 Fed. Cl at 299, 303. The Air Force took nearly seven months to enter into the Partial Settlement Agreement ("PSA"), and then later argued before the Board that the PSA was unenforceable. SUFI Network Services, Inc., ASBCA No. 55306, 06-2 BCA ¶ 33,444 (Nov. 8, 2006) ("SUFI IV"); SUFI I, 108 Fed. Cl. at 301. The contracting officer's decision, despite the unequivocal breach, and the Air Force's resistance to entering a PSA, forced SUFI to seek judicial review. In order to obtain judicial review, SUFI was required to first appear before the ASBCA pursuant to its contract with the Air Force. SUFI I, ASBCA No. 54503, ¶ 32,606. The Air Force's conduct forced SUFI's hand.

Moreover, the Government continued to act in bad faith throughout the ASBCA proceedings by failing to produce necessary documents. Appl. at 14-19. In fact, its conduct at times amounted to spoliation which refers to "the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation" and is a serious failing. Micron Technology Inc. v. Rambus Inc., 645 F.3d 1311, 1320 (Fed. Cir. 2011) (quoting Silvestri v. General Motors

Corp., 271 F.3d 583, 590 (4th Cir. 2001); United Medical Supply Co. v. United States, 77 Fed. Cl. 257, 263 (2007) ("[a]side perhaps from perjury, no act serves to threaten the integrity of the judicial process more than the spoliation of evidence."). Spoliation can be used to infer bad faith when spoliation was knowing, purposeful or intentionally aimed at concealing adverse information. Micron Tech., 645 F.3d at 1326.

The Government's refusal to retain and provide necessary documents is a prime example of spoliation. The extent to which guests used alternative phones provided by the Government in breach of its contract with SUFI was a key issue in determining SUFI's damages. SUFI I, 108 Fed. Cl. at 304-5 ("[T]he best evidence for determining these damages would have been the Air Force's own DSN call records . . . ."). Yet, despite ample notice in 2004 from SUFI's counsel that the Air Force had an obligation to preserve these records, the records were incomplete. Appl. at 15. Even after SUFI asked that the records be maintained, records of phone use following 2004 contained large gaps. Id. When asked about the missing records, the Government denied being requested to retain records. Castanon, Hr'g Tr. 18/159; SUFI VIII, 09-1 BCA ¶ 34018 at 168,238 ¶109(b). Moreover, as was uncovered during the Board proceedings, the Air Force failed to produce documents used by the contracting officer in making his decision despite multiple requests for production. Appl. at 16. The hundreds of documents withheld were collections of pages ranging from pages "38" to "2016" suggesting that these documents were selected for removal and not simply misplaced. R4F, vol. 4, tabs 297-325. Spoliation was pervasive during the Board proceedings despite SUFI's every attempt to alert the Government of its duty to provide documents.

The Board's pre-remand actions also support a finding of bad faith. The Wunderlich Act was enacted to protect a plaintiff against a Board's "over zeal" for the department it is responsible for overseeing. 41 U.S.C. § 321 (2006); H.R. REP. No. 83-1380, as reprinted in 1954 U.S.C.C.A.N. 2191, 2192-94. A board's decision can be so grossly erroneous that one can imply bad faith, especially when the error clearly favors the Board's department. Id. Subjective malice on behalf of a board is not required to show bad faith, only a gross error that implies protection of the department. Hoel-Steffen Construction Co. v. United States, 231 Ct. Cl. 128, 141, 684 F.2d 843, 850-52 (1982).

When presented with a list of purported errors in three motions for reconsideration, the Board found it had made about half the critical errors that SUFI cited in its motions. Appl. at 19. Despite noting these errors and granting an unprecedented three motions for reconsideration, the Board only increased SUFI's award from $3,790,496.65 to $7,416,751.52, just four percent of SUFI's initial claim. SUFI I, 108 Fed. Cl. at 295. After remand, the Board awarded $113,254,498.43. To put this amount in perspective, this award was nearly 1527 percent greater than its pre-remand award. The sheer gap in awards, upon the same record, indicates gross error. Moreover, the Board's pre-remand decision often lacked a legal basis. For example, the Federal Circuit found the Board's method of computing certain damages "not entirely explicit or clear in its foundation." SUFI CAFC

I, 755 F.3d at 1315.  On the basis of these facts, this Court already has drawn the appropriate inference:

> Indeed, the Board's <u>SUFI VIII</u> decision gives the impression that the Board ruled in every possible way to cut back SUFI's damages.  Virtually every Board judgment call went against SUFI and in favor of the Government.  In view of the willfulness of the Air Force breaches, one would expect the outcomes to have been just the opposite . . . .

<u>SUFI I</u>, 108 Fed. Cl. at 295.  This Court, the Federal Circuit and the post-remand Board all found the pre-remand Board decisions to be without basis and, often, without any attempt at explanation.  <u>Id.</u>; <u>SUFI CAFC I</u>, 755 F.3d at 1315.  Given three motions for reconsideration and many critical errors, there is a strong inference that the Board was attempting to shield the Air Force from costly judgments.

Finally, SUFI alleges that even Department of Justice actions during litigation before this Court and the Federal Circuit were in bad faith.  Appl. at 23.  Most notably, the Government sought appellate review of its own Board's post-remand decision despite clear precedent indicating that the Government was bound by the Board's decision.  <u>Id.</u>  This Court dismissed with prejudice indicating its "expectation that the Department of Justice will instruct the AFNAFPO to pay the Board's award of damages with interest."  <u>SUFI II</u>, 122 Fed. Cl. 257, 263 (2015).  The Government did not follow this Court's instruction and instead again appealed to the Federal Circuit.  Without even needing oral argument, the Federal Circuit granted summary affirmance noting that "[t]he United States cites no authorities that are on point" and even if it had "[g]iven how exhaustively the competing inferences from evidence were contested and examined in numerous rounds of this dispute-resolution process, there may not be grounds for disturbing the Board decision . . . ."  <u>SUFI CAFC II</u>, 817 F.3d at 778, 782 (2016).  There was no legal basis for the second round of Board review.  It merely delayed payment to SUFI without justification.

The Court has addressed the bad faith conduct of the Government at length.  It is clear that, taken together, the Government has acted in "bad faith, vexatiously, wantonly or for oppressive reasons." <u>Alyeska Pipeline Service Co</u>, 421 U.S. at 258-59; <u>F.D. Rich Co.</u>, 417 U.S. at 129.  This Court can simply see no other cause for the continuous and unfounded challenging of SUFI's recovery using every possible means.  In defense of its conduct, the Government insists that it did not abuse the litigation process because it did not violate a court order or otherwise show "unjustified disobedience." Def.'s Resp. at 24.  For all the reasons stated above, this Court disagrees.  SUFI is entitled to recover its attorneys' fees and expenses under § 2412(b) due to the Government's demonstrated bad faith conduct before and during the litigation process.

14

2.  SUFI is Entitled to its Attorneys' Fees and Expenses under §2412(d).

SUFI next argues that the Government's position in this case was not substantially justified and, thus, it is entitled to attorneys' fees and expenses under § 2412(d).  Appl. at 33.  It argues that both of its victories before the Federal Circuit demonstrate that the Air Force, the ASBCA and Department of Justice advanced unjustified positions in challenging SUFI's claims for relief.  The Government argues that at each stage of this case's litigation it advanced substantially justified positions, many of which were successful.  Def.'s Resp. at 11.  The Court agrees with SUFI.  The record shows that the Government advanced substantially unjustified positions throughout the life of this case.

Following a plaintiff's assertion that the Government's position was not substantially justified, the Government bears the burden of demonstrating that its position was substantially justified.  Scarborough v. Principi, 541 U.S. 401, 414 (2004).  The Government must show that its position had a "reasonable basis both in law and fact" that is "justified to a degree that could satisfy a reasonable person."  Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Both the position taken by the Government during the civil action and the Government's action upon which the civil action is based are relevant.  "Only one determination of substantial justification can be made, which may encompass both the agency's pre-litigation conduct and the Department of Justice's subsequent litigation position."  California Marine Cleaning Inc. v. United States, 43 Fed. Cl. 724, 279 (1999).  Accordingly, this Court must look at the entirety of the Government's conduct in this case and decide whether the Government generally advanced a substantially justified position.  Commissioner I.N.S. v. Jean, 496 U.S. 154, 160 (1990).  The Supreme Court prefers to consider the overall conduct in the case as opposed to considering individual conduct as "atomized line-items."  Id.

The underlying Government conduct giving rise to this case was the Air Force's willful breach of its contract with SUFI.  SUFI I, 108 Fed. Cl. at 295.  A willful breach is not substantially justified.  Even more so, the specific actions taken by the Air Force were clearly not substantially justified.  To name just a few of these actions, the Air Force refused to honor the contract by permitting calling card access to avoid using SUFI's calling services, refused to remove government phones from the premises and encouraged guests to circumvent SUFI's long-distance calling system.  Appl. at 34-37; Hanson, Hr'g Tr. 4/414-20; Stephens, Hr'g Tr. 10/66-68; SUFI I, 108 Fed. Cl. at 306-7.  Despite acknowledging that the Government's conduct giving rise to a civil action is pertinent, the Government does not address any of the Air Force's actions during its willful breach.  Def.'s Resp. at 13.  Instead, the Government lists all of the issues upon which its position prevailed during litigation and points out that SUFI was not awarded the entirety of its initial claim.  Id. at 13-19.  It presents the Court with all the instances in which the Board or Federal Circuit agreed with the Government or when SUFI declined to challenge a Board decision in the Government's favor.  Id.  The Government is essentially arguing that since

it successfully avoided a judgment which would award SUFI the entirety of its claim, its position was substantially justified.

The Government's arguments are unavailing.  The Government asks the Court to infer that it was substantially justified on the basis of a list of award reductions upon which it prevailed, some relatively minor.  See e.g., Def.'s Resp. at 14 (noting that SUFI accepted the Board's decision not to award $15,489 of its claim).  However, the issues upon which the Government did not prevail are much more significant.  While SUFI did not receive the $131 million it initially claimed, it received 1527 percent more than the Board's award following remand for a total of approximately $113 million.  If the fact that SUFI received $18 million less than what it asked for is evidence that the Government's position was substantially justified, then surely SUFI's $113 million award is even stronger evidence that the Air Force's initial breach was not substantially justified and that the Government's refusal to compensate SUFI was not substantially justified.  The Government hopes to defeat a § 2412(d) claim by attempting to present a list of successful claims, but ignores that the test for substantially justified cannot be proven using "atomized line-items."  Jean, 496 U.S. at 160.  When viewed as a whole, the Government's position in this case was not substantially justified.

Perhaps most illuminating is the Justice Department's decision to appeal the Board's remand decision, despite having no reasonable basis in law or fact to do so.  The Supreme Court unequivocally held, in a Wunderlich case, that the Government does not have the right to appeal an adverse board decision when there is no claim of fraud or bad faith on behalf of the board.  S&E Contractors, Inc. v United States, 406 U.S. 1, 8 (1972).  The Government was not satisfied with the Board's final award to SUFI and unreasonably sought appeal.  The Federal Circuit found no sound basis for any of the Government's arguments that it should be allowed to appeal.  "[W]e have been offered no good reason why that fact provides a basis for a different conclusion under the S&E line of authority." SUFI CAFC II, 817 F.3d at 778.

In a case involving many decisions, such as this one, a "string of losses can be indicative; and even more so a string of successes." Pierce, 487 U.S. at 569.  SUFI prevailed at every turn.  At some point, the Government must recognize that it is not justified in continuing to fight a reasonable judgment.  In this case, the Government only accepted defeat when the Federal Circuit left it no further avenues for review.  SUFI CAFC II, 817 F.3d at 782.  Even now, the Government insists that SUFI is entitled to none of its attorneys' fees.  According to controlling Supreme Court precedent, this Court is required to consider the Government's position taken throughout this case as a whole.  Pierce, 487 U.S. at 569; Jean, 496 U.S. at 160.  From the very beginning when the Air Force breached its contract with SUFI to the very end when the Federal Circuit summarily affirmed this Court's dismissal of the Government's appeal, the Government's position has not been substantially justified.  Therefore, SUFI is entitled to recover its attorneys' fees and expenses under § 2412(d).

For the reasons stated above, the Court holds that SUFI is entitled to recover its attorneys' fees under subsection (b) or, in the alternative, subsection (d) of § 2412.

C.   SUFI is Entitled to Full, Current Rates under either § 2412(b) or (d).

Awards under § 2412(b) are traditionally limited to historical, rather than current, market rates.  Chui v United States, 948 F.2d 711, 719 (Fed. Cir. 1991).  Awards under § 2412(d) are statutorily capped at $125 per hour.  28 U.S.C. § 2412(d)(2)(A).  However, SUFI argues that, under both subsections, it is entitled to an award at full, current rates under applicable exceptions.  Appl. at 11, 38.  The Court agrees.

1.   SUFI is Entitled to Full, Current Rates under § 2412 (b).

The Government argues that any award of attorneys' fees should be at the historical rate because any increase would constitute interest.  Def.'s Resp. at 28.  It is well-established that a "no-interest" rule applies to damages awards against the Government, unless specifically allowed by law.  28 U.S.C. § 2516(a); Library of Congress v. Shaw, 478 U.S. 310, 311 (1986) ("In the absence of express congressional consent to the award of interest . . . the United States is immune from an interest award."); Chui, 948 at 719 ("The EAJA does not authorize increases to the hourly rate in the nature of interest payments."). SUFI argues that the particular increase it seeks is not interest but instead an adjustment due to the exceptional delay of payment caused by the lengthy duration of this case.  Appl. at 38.

The Government relies upon the Supreme Court's decision in Library of Congress v. Shaw to show that an adjustment for delay is interest, and therefore not allowed.  Def.'s Resp. at 28.  Interpreting 42 U.S.C § 1988, the Supreme Court held in Shaw that any enhancement in rate awards for delay was the functional equivalent of interest and that a fee-shifting statute did not overcome the prohibition on interest.  Shaw, 478 U.S. at 322 ("Interest and a delay factor share an identical function.").  While this decision was controlling at the time of issuance, it has since been undermined by Congress' amendment of § 1988 to explicitly allow for adjustment of rates for delay.  42 U.S.C. § 2000-16(d) (2012); H.R. REP. No. 102-40(I), as reprinted in 1991 U.S.C.C.A.N. 549, 624-25.  Also, later Supreme Court cases have affirmed the change in policy that adjustments for delay of payment are appropriate for fee-shifting statutes.  In Missouri v Jenkins, the Supreme Court held that adjustments for delay of payment were appropriate for a § 1988 fee-shifting statute. 491 U.S. 274, 284 (1989).  Likewise after Shaw, the Supreme Court held that "[w]e do not suggest . . . that adjustments for delay are inconsistent with the typical fee-shifting statute."  Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 716 (1987).

The issue here is to determine what weight to afford Shaw given the subsequent Supreme Court decisions and congressional action eroding the decision.  This Court thinks very little weight should be afforded.  The policy behind any fee-shifting statute is to reduce

the economic deterrents to contesting unreasonable government actions by holding the Government liable for attorneys' fees and expenses.  Pub. L. No. 96-481; H.R. REP. No. 96-1418 at 6.   Section 2412(b) in particular aims to hold the Government liable for attorneys' fees and expenses "to the same extent that any other party would be liable under the common law . . . ." 28 U.S.C. § 2412(b).  When significant delay in payment occurs, attorneys are discouraged from litigating cases that could result in lengthy delays.  Congress disagreed with the decision in <u>Shaw</u> because it conflicted with the stated policy of fee-shifting statutes:

> The Shaw ruling also undermines Title VII's goal of encouraging private enforcement by discouraging attorneys from taking employment discrimination cases against the federal government. Such cases typically last several years, during which time the plaintiff's attorney usually receives nothing for his services. Even if the attorney wins the case and receive an attorney's fee award, under current law the attorney will be denied any interest for the delay in payment.

H.R. REP. No. 102-40, 86.  The Supreme Court articulated similar reasoning:

> Clearly, compensation received several years after the services were rendered–as it frequently is in complex civil rights litigation–is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings.

<u>Jenkins</u>, 491 U.S. at 283.  The statements from Congress and the Supreme Court support the conclusion that adjustments for delay advance the policy behind fee-shifting statutes, while disallowing compensation for delay conflicts with the policy.

This case aptly illustrates the need to allow adjustments to account for delay in awarding attorneys' fees.  The Board decided that the Air Force materially breached its contract with SUFI in November 2003 and SUFI notified the contracting officer that it intended to stop performance in August 2004.  <u>SUFI I</u>, 108 Fed. Cl. at 295.  The professional hours before the Board began in 2004 and ended in 2009.  Appl. at 31.  It has been twelve years since Crowell & Moring began incurring these hours.  Additionally, the delays experienced in the Board proceedings were not merely accidental.  SUFI spent nearly five years before the Board pursuing appropriate relief, with three motions for reconsideration toward the end of this period.  <u>Id.</u>  Payment was further delayed by the Government's two unsuccessful appeals to the Federal Circuit.  <u>SUFI CAFC I</u>, 755 F.3d at 1305; <u>SUFI CAFC II</u>, 817 F.3d at 773.  Not only would SUFI's counsel not be justly compensated for work done twelve years ago without an adjustment, but the Government would be rewarded for dragging this litigation out for more than a decade.

The facts of this case fit precisely within the pronouncements of Congress and the Supreme Court for adjusting fee awards to account for delay. SUFI is entitled to an award of its attorneys' fees and expenses at current law firm rates to compensate for twelve years of delay.

### 2. SUFI is Entitled to Full, Current Rates under § 2412(d).

EAJA limits the hourly rate at which attorneys' fees can be awarded under § 2412(d) to $125 per hour "unless the court determines that . . . a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Congress has suggested one such special factor, the limited availability of qualified attorneys, but has not asserted that this is the only viable special factor. SUFI argues that at least three additional "special factors" apply to this case including: (a) obtaining exceptional results; (b) performing special tasks; and (c) experiencing extraordinary delay of payment. Appl. at 38-41. SUFI further argues that this case meets all four exceptions to EAJA's $125 per hour cap. Id. In response, the Government argues that the only special factor recognized by courts under EAJA is the limited availability of qualified attorneys and that the Crowell & Moring law firm does not qualify under this exception. Def.'s Resp. at 31-37. In order to succeed, SUFI need not demonstrate that each purported special factor applies to this case. As explained below, the Court holds that SUFI is entitled to an award of full, current law firm rates under § 2412(d) because the special factors justify a higher fee.

### a. Exceptional Results

First, SUFI argues that obtaining exceptional results for its small business client is an "important" factor in considering an upward adjustment. Appl. at 38-39 (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)); Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 554 (2010). The Federal Circuit has interpreted Hensley's recognition of the exceptional results special factor to apply directly to EAJA awards. Hubbard, 480 F.3d at 1333 (holding that "the degree of the plaintiff's overall success goes to the reasonableness of a fee award under Hensley . . . [t]his principle applies . . . where attorney fees are sought under the Equal Access to Justice Act.").

The Government argues that this line of case law is inapplicable because of two minor details. First, these cases involve the lodestar method of determining attorneys' fees instead of hourly rates.[2] Id. at 1332-34; Hensley, 461 U.S. at 440; Perdue, 559 U.S. at 551-52. This difference is considerably overstated. In Hensley, the Court explicitly held "the

---

[2] The lodestar method is commonly used in fee-shifting cases to determine reasonable attorneys' fees. The calculation takes the number of hours reasonably devoted to the case and multiplies by a reasonable hourly fee to produce an award roughly approximate to the fee an attorney would have received if he or she had been representing a paying client in a comparable case. Perdue, 559 U.S. at 551 (citing Gisbrecht v. Barnhart, 535 U.S. 789, 801 (2002)).

*hours* spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." 461 U.S. at 440 (emphasis added). In <u>Perdue</u>, the Court held that "the quality of an attorney's performance generally should not be used to adjust the lodestar '[b]ecause considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate.'" 559 U.S. at 553 (quoting <u>Pennsylvania v. Delaware Valley Citizens' Council for Clean Air</u>, 478 U.S. 546, 566 (1986)). These cases do not suggest that lodestar calculations are subject to some special legal standard. Instead they suggest that the Court was applying a general rule to consider the quality of an attorney's performance when adjusting rates. These cases just happen to involve lodestar calculations, not hourly rates. <u>Perdue</u> in particular supports a finding for SUFI because it states that quality of counsel is usually reflected in an attorney's reasonable hourly rates which is exactly what SUFI is requesting.

Second, the Government argues based upon these cases that a fee award can be reduced when the results obtained were meager, but cannot be increased. <u>Hubbard</u>, 480 F.3d at 1332-34 (reducing the overall lodestar amount due to a meager award of $400); <u>Hensley</u>, 461 U.S. at 440. This interpretation is directly at odds with the policy goals of protecting small businesses from unreasonable Government action under § 2412(d). If attorneys' fees will be reduced for negligible awards, but not increased for exceptional awards, then attorneys face a double-edged sword. Attorneys will be discouraged from bringing cases which may not yield moderate awards for fear of having their fees reduced, while also being discouraged from bringing cases that will yield exceptional results for quality work because a fee award will not adequately compensate for the additional work required to achieve the exceptional result. This illogical consequence cannot be what Congress intended. Instead, according to the Supreme Court in <u>Perdue</u>, extraordinary results can be considered in general, not just those that support a reduction. <u>Perdue</u>, 559 U.S. at 546 ("We have stated in previous cases that an increase is permitted in extraordinary circumstances, and we reaffirm that rule.").

This case presents an obvious candidate for an increase in fees due to exceptional results. The Crowell & Moring law firm achieved what is likely the largest judgment on record against the Government on a Non-Appropriated Funds contract. Appl. at 39. It succeeded in achieving a 1527 percent increase in damages after a remand. If this outcome does not qualify as exceptional success, this Court cannot imagine what would. Exceptional results is a special factor under § 2412(d) and SUFI's counsel without doubt achieved exceptional results.

b. <u>Special Tasks Performed</u>

Second, SUFI argues that performing special tasks not normally performed by an attorney warrants an upward adjustment of the hourly rates under § 2412(d). Appl. at 40. The preparation of SUFI's breach of contract claim required special accounting and database expertise. Since SUFI could not afford those professional services independently,

counsel for SUFI provided an employee, Ms. Tatiana King, with the relevant expertise. King, Hr'g Tr. 22/298-355. In total, employees of Crowell & Moring spent approximately 740 hours performing accounting and database analysis, all billed using the rates of Crowell & Moring timekeepers.

The Government correctly points out that SUFI presents no supporting precedent finding that special tasks performed by non-counsel employees constitute a "special factor" under § 2412(d). In fact, special abilities of counsel are generally not considered a special factor under § 2412(d). Phillips, 924 F.2d at 1584. Thus, the Government argues that since the special abilities of counsel are not considered an appropriate special factor, neither should the abilities of non-counsel employees. Id. The Court agrees with the Government that SUFI has not appropriately supported its claim that special tasks performed are a special factor under § 2412(d). SUFI has shown only that it recovered in the rates of timekeepers for those hours, but has not presented any information indicating why, or if, those rates are unfair. However, SUFI need not successfully convince the Court of all four purported special factors in order to be awarded full, current rates under § 2412(d).

c.  Extraordinary Delay

Similar to its argument for an upward adjustment under § 2412(b), SUFI argues that extraordinary delay in payment is a special factor under § 2412(d). Appl. at 41. The reasoning is also similar and need not be repeated here. However, it is worth noting that the D.C. Circuit has held that under Jenkins, and despite Shaw, upward adjustment for extraordinary delay is not interest and is a special factor under § 2412(d). Oklahoma Aerotronics, Inc. v. United States, 943 F.2d 1344, 1350 (D.C. Cir. 1991). The D.C. Circuit held that:

> [D]elay may be regarded as a 'special factor' under the EAJA without differentiating among possible causes of delay. It is true that a "special factor" under EAJA may not be "of broad and general application," and that there will be some delay in almost every case. But what makes the factor "special" is not simply delay, but unusual delay. In this case, the eight-year hiatus between the filing of the fee application and the decision plainly qualifies.

Id. (internal citations omitted). If an eight-year delay between request for payment and a decision "plainly qualifies" then surely more than a decade between incurring costs and receiving payment also plainly qualifies. Moreover, the delay was caused mainly by the Government doggedly pursuing substantially unjustified positions. Even though the Air Force willfully breached the contract and thereby harmed a small business, the Government

has refused to concede even miniscule points.  There is no need to repeat the lengthy discussion regarding the Government's unjustified conduct.

Thus, the extraordinary delay caused in this case by the Government's refusal to compensate SUFI and its insistence on advancing unjustified litigation positions is a special factor under § 2412(d).

### d.  Limited Availability of Qualified Attorneys

Finally, SUFI argues that this case is an example of the special factor explicitly mentioned by Congress in § 2412(d)(2)(A) – the limited availability of qualified attorneys. Appl. at 42.  The Supreme Court construed this special factor as follows:

> [T]he exception for "limited availability of qualified attorneys for the proceedings involved" must refer to attorneys "qualified for the proceedings" in some specialized sense, rather than just in their general legal competence.  We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation.  Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language.  Where such qualifications are necessary and can be obtained only at rates in excess of the $[125] cap, reimbursement above that limit is allowed.

Pierce, 487 U.S. at 572.  SUFI argues that government contract litigation requires specialized skills analogous to that required for patent law.  Appl. at 43.  Courts have analogized many different fields of law to that of patent law in finding that certain fields require expertise possessed by a limited number of qualified attorneys.  See e.g., Nadarajah v. Holder, 569 F.3d 906, 911-45 (9th Cir. 2009) (immigration law); Love v. Reilly, 924 F.2d 1492, 1496 (9th Cir. 1991) (environmental law); Pirus v. Bowen, 869 F.2d 536, 541 (9th Cir. 1989) (Social Security law); In re Tom Carter Enterprises, Inc., 159 B.R. 557, 562 (Bankr. C.D. Cal. 1993) (bankruptcy law).  SUFI argues that, in principle and under certain facts, government contracts law requires specialized expertise to the same extent as does Social Security law, environmental law, patent law and bankruptcy law.

However, as the Government points out, the Court of Federal Claims has not held "that expertise in government contracts per se satisfies the EAJA special factor requirement."  DGR Associates, Inc. v. United States, 97 Fed. Cl. 214, 220 (2011) (emphasis added).  See also Impresa Construzioni Geom. Domenico Garufi v. United States, 100 Fed. Cl. 750, 773 (2011); Prowest Diversified, Inc. v. United States, 40 Fed.

Cl. 879, 889 (1998); Esprit Corp. v. United States, 15 Cl. Ct. 491, 494 (1988). The Government seems to argue that since government contracts law is not *per se* a field of legal expertise that qualifies as a special factor under § 2412(d), expertise in government contracts litigation can *never* qualify. Def.'s Resp. at 34-35.

The Government incorrectly claims that government contracts litigation *as such* requires a level of expertise that results in a limited availability of qualified attorneys. The question of whether litigation requires special expertise is highly fact sensitive and different cases may warrant different outcomes. For example, courts have reached different conclusions regarding whether a case requiring expertise in Social Security law is sufficient to conclude that there was a limited availability of qualified attorneys depending on how necessary Social Security law expertise was to the case. See Pirus, 869 F.2d at 541 (noting that Pirus' attorneys were experts in Social Security law and uniquely situated to handle the claim due to recent experience litigating a similar case); contra Raines v. Shalala, 44 F.3d 1355, 1361 (7th Cir. 1995) (declining to find that Social Security expertise was needed for the claim before the court). The Seventh Circuit in Raines notes that "the appropriate inquiry is whether the individual case presents such an 'unusual' situation that it *requires* someone of "specialized training and expertise unattainable by a competent attorney through a diligent study of the governing legal principles." Id. (quoting Chynoweth v. Sullivan, 920 F.2d 648, 650 (10th Cir. 1990)). Thus, in assessing whether this special factor applies, the Court must assess the needs of this particular plaintiff and whether there are any unusual circumstances requiring expertise in government contracts.

Many of this Court's decisions addressing this issue have held that government contracts expertise did not qualify as a special factor under § 2412(d) because the litigation before it could have been similarly handled by a general litigator. California Marine, 43 Fed. Cl. at 733 ("[I]t cannot be said that they provided any distinctive knowledge or specialized skill . . . [n]or has plaintiff demonstrated that distinctive knowledge or specialized skill was required to litigate the issues in this case . . . ."); Impresa Construzioni, 100 Fed. Cl. at 773 ("Plaintiff does not argue that its attorneys had some distinctive knowledge or specialized skill needed for the litigation."); Prowest, 40 Fed. Cl. at 889 ("The present case does not require any specialized knowledge or skill . . . .").

Unlike those cases, the facts here do suggest that Crowell & Moring's expertise was essential to SUFI's success. First, SUFI initially approached its regular counsel to take on this matter and its counsel declined because this case required specialized knowledge, specifically recommending Crowell & Moring. Appl. at 45 (citing Myers Affidavit ¶¶5-7). Second, this case involved an unusual kind of government contract under a non-appropriated funds instrumentality employing its own unique set of rules and contract clauses unknown to most general litigators. Third, Crowell & Moring also served as an accounting expert during the litigation – a skill essential to the litigation and requiring specialized knowledge of accounting in government contracts. Appl. at 46 (citing Claybrook Affidavit ¶¶ 6-7). Fourth, Crowell & Moring was extremely successful in

achieving a significant award and setting records for damages within government contracts litigation. If ever there were a set of facts supporting a finding that government contracts expertise was essential to a litigation, this is it.

In sum, SUFI has successfully argued that three out of its four purported special factors warrant awarding full, current rates under § 2412(d).

Under either § 2412(b) or § 2412(d), SUFI is entitled to recover its attorneys' fees and expenses at full, current hourly rates. In addition, SUFI is entitled to interest on a judgment for attorneys' fees and expenses from the date of filing this application pursuant to the PSA. Appl. at 31, Ex. B70 ¶4.

Conclusion

The Court finds that SUFI is entitled to recover its attorneys' fees and expenses at full, current law firm rates under 28 U.S.C. § 2412, and that interest on its § 2412 claim began to accrue from the date its application was filed on June 17, 2016. The issue of quantum has been bifurcated. Dkt. No. 82. Given this decision, determining the amount of SUFI's award is a mere matter of accounting. To prevent any further delay and expenditure of resources in this matter, counsel for the parties are encouraged to reach an agreement regarding quantum and achieve finality. Counsel for the parties are directed to file a joint status report within 30 days, on or before November 18, 2016, indicating how they plan to proceed.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge